303 F.2d 637
 Franklin S. WALLACE, Individually and on behalf of all other
users of the Rock Island Centennial Bridge, similarly
situated, and on behalf of all other holders of Rock Island
Centennial Bridge Revenue Bonds and Interest Coupons
similarly situated, Plaintiff-Appellant,
v.
CITY OF ROCK ISLAND, a Municipal Corporation of the State of
Illinois, Defendant-Appellee.
 No. 13566.
 United States Court of Appeals Seventh Circuit.
 May 18, 1962.
 
 Stuart R. Lefstein, Rock Island, Ill., for appellant.
 Charles D. Marshall, Jr., Bernard C. Gillman, Rock Island, Ill., for appellee.
 Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.
 KNOCH, Circuit Judge.
 
 
 1
 Plaintiff, Franklin S. Wallace, brought this action in the United States District Court to compel the defendant City of Rock Island to return $52,314.80 to a sinking fund established for the retirement of bonds issued to finance construction work on the Rock Island Centennial Bridge, a toll bridge spanning the Mississippi River from Rock Island, Illinois, to Davenport, Iowa. The City of Rock Island issued.$4,650,000 worth of Centennial Bridge Revenue Bonds in denominations of $1000 each. The facts are fully set out in the District Court Opinion published at D.C., 198 F.Supp. 73 (1961) and need not be repeated here. The defendant city moved to dismiss the complaint challenging, upon several bases, the existence of jurisdiction of the subject matter in the U.S. District Court. The District Court held that plaintiff's capacity as a user of the bridge afforded him and the other users no ground for relief, and that the counts pleading a cause of action as a bondholder individually and on behalf of all other bondholders, failed to show (1) any amount in controversy between plaintiff and plaintiff's class and the defendant City to meet the jurisdictional requirements of the District Court (28 U.S.C. 1331); of (2) a cause of action arising under an Act of Congress regulating commerce (28 U.S.C. 1337). This appeal followed.
 
 
 2
 Plaintiff has apparently abandoned his Count I which was based on his and others' rights as users of the Bridge. We will, therefore, consider only Counts II and III.
 
 
 3
 Plaintiff in Count II sues as a holder of one revenue bond ($1,000); and in Count III sues on his own behalf and on behalf of all other similarly situated holders of revenue bonds, none of whom have joined in this action although it was pending for many months.
 
 
 4
 Pursuant to Public Law 446, 52 Stat. 110, as amended by Public Law 682, 70 Stat. 520, the defendant City adopted an ordinance for issue and sale of revenue bonds. The ordinance provided for tolls to be allocated (1) to maintenance expense, (2) to a sinking fund to pay interest and principal as it fell due on the bonds, and (3) to a bridge revenue surplus account.[1] Pursuant to the provisions of the bond ordinance, the City caused a transfer of $52,314.80 from the bridge revenue surplus account to the City Treasury. Plaintiff contends that insofar as the ordinance permits such transfer of bridge revenue, the ordinance is in violation of Public Law 446, as amended (33 U.S.C.A. 529), and an invalid tax on interstate commerce in violation of the Constitution. He contends that the bondholders have been deprived of a degree of financial protection which they would have enjoyed if the bridge revenue were applied solely to maintenance of the bridge and payment of the bonds and coupons. The complaint asks the Court to hold that the bond ordinance, insofar as it authorizes transfer of bridge revenues, is void because it conflicts with federal law. The Court is asked to enjoin further transfers and to require restoration of the transferred funds.
 
 
 5
 By specific provision in the ordinance itself, plaintiff is given a right to bring action against the City to compel performance of duties imposed on the City by the ordinance or by Acts of Congress. The question before the District Court was whether plaintiff could prosecute his action in the District Court.
 
 
 6
 Plaintiff's complaint avers that the jurisdictional amount of $10,000 was involved. However, there is no showing that plaintiff or any other bondholder has suffered any pecuniary loss. No due and payable bond or interest coupon is alleged to be unpaid. As the District Court found:
 
 
 7
 'On the contrary, the fair implication of the complaint is that all have been paid.' (198 F.Supp. page 77)
 
 
 8
 Plaintiff also contends that his action arises under an Act of Congress regulating commerce, and that he has met the jurisdictional requiremenss of Section 1337. He argues that this cause of action concerns the construction of an Act regulating commerce and involves rights of a complaining party created by Congress and abridged by the City's transfer of the funds.
 
 
 9
 We must agree with the District Court that Public Law 446, as amended, authorizing construction of a bridge over the navigable waters of the Mississippi River involves regulation of commerce in so insignificant a sense as not to meet the jurisdictional requirements of Section 1337. The existence of a bridge and its manner of operation only incidentally affect flow of commerce. There is no contention that the bridge obstructs navigation. Congress has given no right to private persons, as distinguished from the United States and its appropriate agencies, to seek federal court aid to enforce this Act, or the general bridge statute. United States v. White County Bridge Commission, 7 Cir., 1960, 275 F.2d 529, cert. den. 1960 sub nom. Clippinger v. U.S., 364 U.S. 818, 81 S.Ct. 50, 5 L.Ed. 48. Any right of action which plaintiff possesses was created by the ordinance which he seeks to have declared void in part.
 
 
 10
 To establish jurisdiction over interpretation of the federal statute, there must have been a justiciable controversy between plaintiff and the City. That would require showing of apecial damage to plaintiff and the other bondholders as distinguished from damage to the public generally. Greater Hartford Free Bridge Assn. v. Greater Hartford B.A., D.Conn., 1958, D.C., 172 F.Supp. 244, affirmed 2 Cir., 1959, 265 F.2d 656. From plaintiff's complaint it appears that his interest and that of the other bondholders does not differ from the interest of the general public in maintaining obedience to the laws of the land. The judgment of the District Court is affirmed.
 
 
 
 [1]
 In his Opinion, the District Judge referred frequently to the Bond Ordinance of the City of Rock Island. Counsel also quoted from it in their briefs and oral argument in this Court. By order of this Court, copies of the Ordinance were filed with the Clerk of this Court for use by this Court in consideration of the issues of the appeal. The Ordinance provides:
 'If any balance shall remain in the Surplus Account after the foregoing provisions, said Trustee shall promptly transfer one-half of said balance to the Redemption Account for Series B of 1958 Bonds to be used for the prior redemption of bonds as hereinabove provided. The remaining one-half of said balance in the Surplus Account may, pursuant to resolution passed by the City Counsel of said city, be ordered transferred by the Trustee to the City Treasurer for deposit in the general corporate purpose fund of said city as payment for general services and expenses including loss of taxes resulting from the construction of said bridge and its approaches; provided, however, that such one-half of said surplus revenues that may be available at the end of any fiscal year and is not so transferred, to said city within six months after becoming available therefor shall be retained by the Trustee and deposited in said Sinking Fund to be used and held in the same manner as revenues deposited in said Fund.'